UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Scott L.,[1]

        Plaintiff,

v.

Frank Bisignano, Commissioner of
Social Security,

        Defendant.

Case No. 24-cv-1236 (JFD)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Scott L. seeks judicial review of a final decision by the Defendant Commissioner of Social Security, which denied Plaintiff's application for disability insurance benefits ("DIB"). Before the Court are Plaintiff's Memorandum (Dkt. No. 6) and Defendant's Brief (Dkt. No. 9).

Plaintiff argues that the final decision should be reversed for three reasons. First, Plaintiff argues that the administrative law judge ("ALJ") erred in finding his mental impairments to be non-severe. Second, Plaintiff faults the ALJ for not considering chronic pain syndrome as a potential impairment. Third, Plaintiff argues that the ALJ failed to include in the residual functional capacity ("RFC") assessment[2] limitations caused by Plaintiff's mental impairments and chronic pain syndrome. The Commissioner asks the

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in Social Security cases.

[2] RFC measures the most a claimant can do, despite his limitations. 20 C.F.R. § 404.1545(a)(1).

1

Court to affirm the final decision. For the reasons set forth below, the Court concludes that the ALJ did not err and affirms the final decision.

**I.      Background**

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the Disability Insurance program under Title II of the Social Security Act and the Supplemental Security Income ("SSI") program under Title XVI of the Act. *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citing *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988)). Only DIB are at issue in this case. DIB is a program that provides support to those who worked and had sufficient social security taxes withheld from their pay over their working life to qualify for coverage if they become disabled. *Id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people).

**A.      Relevant Medical and Other Evidence of Record**

Dr. Matthew Schumann, Ph.D., L.P., saw Plaintiff in October 2019 for a pain psychology consultation, pursuant to a referral from Plaintiff's provider Toure Barksdale, M.D.[3] (*See* Soc. Sec. Admin. R. (hereinafter "R.") 645.)[4] Plaintiff's chief complaint was

---

[3] Although this treatment record predates Plaintiff's February 1, 2020 onset date, the Court finds it relevant to the issues for judicial review. The record predates the onset date by only a few months, and the parties dispute the existence of a diagnosis made by Dr. Schumann at the appointment.

[4] The Social Security administrative record is filed at Dkt. No. 4. The record is consecutively paginated on the lower right corner of each page, and the Court cites to those page numbers rather than the page numbers provided by the Court's CM/ECF system.

chronic neck and back pain. (R. 645.) After a review of Plaintiff's medical history and symptoms and mental status examination, Dr. Schumann diagnosed Plaintiff with spondylosis, cervical without myelopathy; pain, myofascial, cervical; pain, low back, chronic; facet syndrome; and chronic pain syndrome. (R. 648–49.) After three cognitive-behavioral sessions with Dr. Schumann, Plaintiff reported that his overall wellbeing and pain had been well managed the past two weeks through cognitive behavioral therapy techniques. (R. 638.) Dr. Barksdale included chronic pain syndrome as one of Plaintiff's diagnoses in a December 2019 treatment record. (R. 634.)

During an annual examination with provider Elizabeth J. Osborne, M.D., on May 11, 2020, Plaintiff described back pain that was "so painful that it is difficult to even get up out of bed." (R. 627.) Dr. Osborne believed the pain was attributable to Plaintiff's scoliosis and sleeping position at night, and she referred Plaintiff for a chiropractic consultation. (R. 631.) Plaintiff consulted with chiropractor Kevin Hardesty, D.C., a week later. (R. 623.) Plaintiff described low back pain when moving and turning in bed, rating it a 5/10. (R. 623.) Dr. Hardesty administered manual and fascial manipulation, after which Plaintiff reported reduced pain. (R. 626.) Later progress notes document continued improvement after chiropractic treatments of not only low back pain but also neck and upper back pain. (R. 614–19.) By July 21, 2020, Plaintiff reported 100% improvement in his low back pain and 50% improvement in his neck and upper thoracic discomfort. (R. 614.) Dr. Hardesty documented varying degrees of improvement after subsequent visits. (R. 586, 588–92, 601–05.) In October 2020, Plaintiff reported greater than 75% improvement overall and rated his pain a 3/10. (R. 609.)

3

Plaintiff was diagnosed with Ehlers-Danlos syndrome ("EDS") in late 2021. (*See* R. 576.) In October 2021, Dr. Osborne recorded Plaintiff's chief complaint as ongoing neck and back pain. (R. 587.) Plaintiff told the doctor that Tylenol and stretching while lying down helped somewhat. (R. 587.) In November 2021, Plaintiff reported that Gabapentin helped with pain but that the pain was not optimally controlled. (R. 583–84.) Dr. Osborne noted in December 2021 that Plaintiff's muscle aches and pains could be related to EDS. (R. 576.) An MRI of Plaintiff's cervical, thoracic, and lumbar spine showed mild increased lordosis of the cervical spine, mild multilevel bony neural foraminal narrowing in the cervical spine, and significant scoliosis of the lumbar spine with multilevel degenerative disc disease. (R. 714–17.) Otherwise, the findings were unremarkable.

Dr. Osborne wrote in February 2022 that Plaintiff's EDS had caused a progressive decline in his health over the previous five years. (R. 833–34.) The decline in physical health had also caused "emotional and mental fatigue." (R. 834.) In June 2022, Plaintiff told Dr. Osborne he was depressed and anxious because of his physical limitations, noting he was "more short fused and ha[d] snapped at people unexpectedly." (R. 1061.)

In March 2022, Plaintiff saw a neurologist for neck pain and hand numbness. (R. 855.) An MRI revealed degenerative changes and nerve narrowing and pinching. (R. 858–59.) Provider Lee Ann Misstishin, PA-C, noted that Plaintiff's neck pain could be attributed to EDS. (R. 859.)

Plaintiff began treating with Dr. Ifechi Anyadioha, M.D., in March 2022 at a pain management clinic. (R. 884.) Plaintiff told Dr. Anyadioha that chiropractic care had provided moderate relief. (R. 884.) Dr. Anyadioha assessed Plaintiff with "chronic,

persistent and disabling neck pain and bilateral hand pain" and scheduled him for epidural steroid injections. (R. 889–90.) An MRI of the lumbar spine in June 2022 included findings of posterior annular tears that could be associated with lower back pain, moderate/severe degenerative disc space disease/desiccation, and moderate/severe left-sided neural foraminal narrowing that could cause left-side radicular pain. (R. 1124.) In August 2022, Dr. Anyadioha repeated the assessment of chronic pain but noted a 60% improvement after a steroid injection. (R. 1119–20.) In November 2022, Plaintiff noted good improvement after injections for neck and low back pain. (R. 933.) In December 2022, Dr. Anyadioha administered a medial branch block for Plaintiff's low back pain, and Plaintiff reported 100% pain relief after the procedure. (R. 1163–64.) Plaintiff reported similar relief after a medial branch block in February 2023. (R. 204.)

Dr. Osborne completed an Ehlers-Danlos Syndrome / Connective Tissue Disease questionnaire on February 4, 2022. (R. 823, 827.) Dr. Osborne opined that Plaintiff was incapable of even "low stress" jobs, could not stand for more than 2 hours total in an 8-hour workday, could not sit for more than 4 hours total in an 8-hour workday, would need to shift positions at will throughout the day, and would need to take unscheduled breaks every 10 to 15 minutes for 10 to 30 minutes at a time. (R. 824–25.)

Dr. Osborne completed a physical RFC questionnaire on January 3, 2023. (R. 1213.) She opined that Plaintiff's pain would "constantly" interfere with the attention and concentration needed for even simple work tasks. (R. 1210.) Dr. Osborne opined again that Plaintiff was incapable of even "low stress" jobs, and also that Plaintiff could not sit or stand for more than 2 hours, respectively, in an 8-hour workday. (R. 1211.)

5

Dr. Osborne also filled out a mental RFC questionnaire on January 3, 2023. (R. 1220.) She indicated that Plaintiff was markedly limited in the functional areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. (R. 1216.) Dr. Osborne also indicated that Plaintiff's "[p]hysical symptoms play a big role in sustained workability and affect mental health." (R. 1220.)

**B.      Procedural History**

Plaintiff alleged disability beginning on February 1, 2020, in his DIB application. (*See* R. 176, 256.) Plaintiff's alleged impairments included EDS, degenerative disc disease, sleep apnea, hearing loss, chronic pain, chronic fatigue, arthritis of the spine and hands, and stroke. (R. 256.) Plaintiff's DIB application was denied at both the initial and reconsideration stages of review, and he requested an administrative hearing before an ALJ.

The ALJ convened an administrative hearing on February 6, 2023, at which Plaintiff and vocational expert ("VE") Adolph Cwik testified. (R. 226.) In relevant part, Plaintiff testified that multitasking was difficult; his short-term memory was poor; and he was concerned about forgetting things. (R. 245.) He also testified that his back pain worsened if he was stationary too long and that he could sit for only 15 minutes and stand for only 5 minutes at a time. (R. 246.)

6

In a hypothetical question to the VE, the ALJ asked Mr. Cwik to consider a person of Plaintiff's age, education, and past work, who would be limited to light exertional work.[5] (R. 249.) Mr. Cwik testified that Plaintiff could perform his past work as a product engineer, technical salesperson, parts repair worker, and sales engineer. (R. 250.) If the hypothetical individual were limited to understanding, remembering, and carrying out simple instructions and tasks, all past jobs would be eliminated. (R. 250.)

The ALJ issued a written decision on March 8, 2023, finding Plaintiff not disabled. (R. 192.) The ALJ followed the familiar five-step sequential analysis described in 20 C.F.R. § 404.1520 in making that determination.[6] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If he was not disabled, the ALJ proceeded to the next step. *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ determined at the first step that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 1, 2020. (R. 178.) At the second step, the ALJ found Plaintiff had the following severe impairments: lumbar spine degenerative disc disease, EDS, and bilateral hearing loss. (R. 178.) Also at step two, the ALJ found that Plaintiff's right-hand arthritis, cervical-spine arthritis, history of skin

---

[5] The hypothetical individual also had pushing, pulling, reaching, exposure, crouching, crawling, climbing, noise, and other limitations that are not material to the issues on judicial review.

[6] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

cancer, history of cerebrovascular accident, obstructive sleep apnea, and obesity were not severe impairments, alone or in combination, because they did not cause more than minimal long-term work restrictions. (R. 179.) Specifically, the impairments had "responded well to conservative care, remained essentially asymptomatic at all relevant times, and/or have not lasted, or are expected to not last, for 12 consecutive months." (R. 179.) With respect to Plaintiff's hand, neck, and upper back pain at step two, the ALJ found they warranted no more than minimal long-term work restrictions. (R. 179.) Plaintiff had responded well to routine and conservative treatment, and Plaintiff consistently reported substantial improvement with conservative care. (R. 179.) Thus, the impairments were not severe. (R. 179.) The ALJ noted that Plaintiff's neck pain may be related to EDS. (R. 179–80.)

The ALJ next determined that Plaintiff's depression and anxiety were not severe impairments because they did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities. (R. 181.) In making that finding, the ALJ considered the four broad areas of mental functioning known as the "paragraph B" criteria.[7] (R. 181.) The paragraph B criteria are (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.2.b. The ALJ found that Plaintiff had no more than mild limitations in all four categories and that his mental

---

[7] These criteria are used to evaluate how mental disorders affect a claimant's functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A.2.b.

impairments would cause no more than a minimal limitation in his ability to do basic work activities, and thus his mental impairments were non-severe. (R. 183.) In discussing the paragraph B criteria, the ALJ observed that Plaintiff's treatment was routine, conservative, and sporadic. (R. 181, 182.) Additionally, Plaintiff's mental state had responded well to medication and treatment, and he reported significant improvement over a short time. (R. 181.) The ALJ found that Plaintiff's testimony that he became overwhelmed and distracted easily, experienced memory issues, had difficulty multitasking, worried excessively, and felt isolated was not supported by the medical evidence of record. (R. 182.) In addition, Plaintiff's daily activities and socialization were generally intact. (R. 182.) The ALJ considered Dr. Osborne's opinions and found them not persuasive. (R. 182–83.)

Proceeding to step three of the sequential analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 183–84.)

Between steps three and four, the ALJ assessed Plaintiff's RFC. Relevant to the issues on judicial review, the ALJ specifically considered Plaintiff's low back pain, noting it began "well before the alleged onset date" and was controlled by conservative treatment. (R. 185.) Plaintiff's neck pain had also improved significantly with chiropractic treatment. (R. 185.) The ALJ described records that noted no reported health concerns, reported that pain was generally controlled during the day, and described normal examination findings. (R. 186.) Plaintiff's pain improved throughout 2022 with physical therapy, medication, and injections, as did his functional abilities. (R. 187–88.) The ALJ noted that medical records lacked signs typically associated with chronic severe pain, such as muscle atrophy, spasms,

9

rigidity, and tremor, and Plaintiff's range of motion and strength were generally normal. (R. 188.) The ALJ considered and found not persuasive all opinions offered by Dr. Osborne. (R. 189–90.) Ultimately, the ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except as follows: He can frequently push or pull with the bilateral upper extremities; he can occasionally reach overhead; he must avoid all exposure to extremes of vibration; he can occasionally crouch, crawl, kneel, climb, and work around hazards such as unprotected heights or unguarded, moving machinery; and he can be exposed to moderate levels of noise, as defined in the Selected Characteristics of Occupations.

(R. 184.)

Proceeding to step four in the sequential evaluation, the ALJ determined that, with the assessed RFC, Plaintiff could perform his past jobs as a parts repair worker, product engineer, sales engineer, and technical salesperson. (R. 191.) Therefore, Plaintiff was not disabled between February 1, 2020, and March 8, 2023, and the ALJ did not proceed to step five. (R. 192.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) That denial made the ALJ's decision the Commissioner's final decision for judicial review.

## II.   Legal Standards

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the

Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the Commissioner. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden of proving disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

**III.    Discussion**

    **A.    Substantial Evidence on the Record as a Whole Supports the ALJ's Finding that Plaintiff's Mental Impairments Were Not Severe.**

Plaintiff challenges the ALJ's finding at step two of the sequential equation that his mental impairments were not severe. (Pl.'s Mem. at 30.) An impairment "is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work

activities." 20 C.F.R. § 404.1522(a); *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."). Basic work activities include "[u]nderstanding, carrying out, and remembering simple instructions"; using judgment; responding appropriately to coworkers, supervisors, and typical work situations; and handling changes in a typical work environment. 20 C.F.R. § 404.1522(b). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* The claimant's burden has also been described as "de minimis." *Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir. 1989).

When a claimant has a medically determinable mental impairment, the ALJ must use a "special technique" and rate four broad functional areas known as the Paragraph B criteria: (1) "[u]nderstand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). The applicable ratings are none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). If the ALJ rates a degree of limitation as "mild," the ALJ generally will conclude that the corresponding impairment "is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ found that Plaintiff had only mild limitations in the four mental functioning categories and that his depression and anxiety did not cause more than minimal limitations in his ability to do basic work activities; thus, Plaintiff's mental impairments were not severe. The ALJ observed that Plaintiff's mental-health treatment was routine,

conservative, and sporadic; that medication was effective; that Plaintiff improved significantly and quickly; that Plaintiff's hearing testimony was not consistent with treatment records; and that Plaintiff's daily activities and socialization were generally normal. The ALJ supported these observations with citations to the record. For example, in June 2022, Dr. Osborne prescribed Cymbalta and referred Plaintiff to counseling, which the ALJ noted was routine pharmacologic management and did not suggest the need for more than minimal work restrictions. (R. 181 (citing R. 1062).) Notably, Dr. Osborne's corresponding progress note did not include any functional or work restrictions related to Plaintiff's mental state. The ALJ's observation that Plaintiff's depression and anxiety improved significantly and quickly with medication is supported by treatment records. (R. 181, 1020, 1042.) The ALJ also took note of the lack of any mental health treatment records or findings from providers other than Dr. Osborne. (R. 183.)

In challenging the ALJ's findings, Plaintiff identifies a treatment note purportedly documenting problems with concentration. (Pl.'s Mem. at 31 (citing R. 646).) That note, however, reflects that Plaintiff "stated he had previous cognitive concerns (difficulties with concentration) more frequently," but "*[h]e noted these concerns have resolved.*" (R. 646) (emphasis added).

Plaintiff also cites a progress note documenting his report to a provider of high levels of anxiety due to pain. (Pl.'s Mem. at 31 (citing R. 639).) But the record also documents Plaintiff's report of decreased and more manageable pain, the success of relaxation and mindfulness techniques, normal attention and concentration, a euthymic mood, and only mild depressive symptoms. (R. 639–40.)

Plaintiff next points out a comment he made to Dr. Osborne in June 2022 that he had been "more short fused and ha[d] snapped at people unexpectedly." (Pl.'s Mem. at 31 (citing R. 1061).) Plaintiff has not shown, however, that being short-fused and snappish would have had more than a minimal impact on his ability to engage in work activities or that this behavior met the 12-month durational requirement.

To the extent Plaintiff relies on Dr. Osborne's opinion offered in the mental RFC questionnaire (Pl.'s Mem. at 31), the ALJ considered the opinion but found it not persuasive. Therefore, the ALJ was entitled to disregard it. *See Jeremy T. S. v. O'Malley*, No. 23-CV-202 (TNL), 2024 WL 1142454, at *11 (D. Minn. Mar. 15, 2024). Plaintiff has neither argued not shown that the ALJ failed to comply with 20 C.F.R. § 404.1520c, which governs how an ALJ must consider and articulate the persuasiveness of medical opinions.

Plaintiff's final argument is that the ALJ did not explain why a conservative course of treatment supports the conclusion that Plaintiff's mental impairments had no more than a minimal effect on his ability to perform mental work activities. (Pl.'s Mem. at 32.) To the contrary, the ALJ pointed out that pharmacological management was routine; treatment records contained few, if any, significant clinical findings; and conservative treatment had successfully and substantially improved Plaintiff's symptoms. (R. 182.) This evidence supported the ALJ's conclusion that Plaintiff's mental impairments were not severe.

> **B. The ALJ Was Not Required to Consider Whether Chronic Pain Syndrome Was a Severe Impairment at Step Two.**

Plaintiff asserts that the ALJ erred by not discussing whether chronic pain syndrome was a severe impairment at step two. (Pl.'s Mem. at 30.) Plaintiff contends that chronic

14

pain syndrome was one of his diagnoses and argues that the ALJ did not consider the effects of pain on Plaintiff's ability to work. (*Id.* at 32.) The Commissioner denies that chronic pain syndrome was diagnosed or that objective medical evidence establishes chronic pain syndrome as an impairment. (Def.'s Br. at 4, 6.) The Commissioner further contends that the ALJ thoroughly considered Plaintiff's pain in connection with other impairments the ALJ found severe (EDS and lumbar spine degenerative disc disease); thus, any error is harmless. (*Id.* at 1, 6.)

Dr. Schumann included chronic pain syndrome as one of Plaintiff's diagnoses after a pain consultation in October 2019. (R. 648–49.) Chronic pain syndrome is listed as a diagnosis in other medical records as well, though not specifically discussed. (*E.g.*, R. 580, 587, 633, 635, 638, 640, 643, 649, 651.) Chronic pain syndrome is listed as a diagnosis in at least two medical records postdating the alleged onset date. (R. 580, 587.) The Court finds that Plaintiff has established a diagnosis of chronic pain syndrome and that the diagnosis is relevant to the time period under consideration.

The Court next considers whether the ALJ erred by not specifically considering whether chronic pain syndrome was a severe impairment at step two. An ALJ's "failure to list a specific impairment at step two is not an error unless the impairment is 'separate and apart' from the other listed impairments." *Gregory v. Comm'r*, 742 F. App'x 152, 156 (8th Cir. 2018). Here, at step two, the ALJ considered pain that was related to the listed impairments of EDS and lumbar spine degenerative disc disease. That pain included neck pain and lower back pain. The ALJ accepted that Plaintiff's lumbar spine degenerative disc disease significantly interfered with his ability to engage in basic work activities and thus

15

was a severe impairment. As to neck pain, however, the ALJ found it had responded well to routine treatment, primarily chiropractic treatment, but also to epidural injections; thus, neck pain was not a severe impairment.

The ALJ also considered pain that could be considered "separate and apart" from EDS and lumbar spine degenerative disc disease: hand pain, cervical pain, and thoracic pain. (R. 179–80.) The ALJ found that none of these sources of pain, alone or in combination with Plaintiff's other ailments, would significantly interfere with Plaintiff's ability to engage in basic work activities. The ALJ explained that diagnostic imaging of the hands revealed no abnormalities on the left hand and only moderate degenerative osteoarthritis of a single joint on the right hand. (R. 179.) In addition, Plaintiff received no specific treatment for hand pain other than routine medication for generalized pain. Cervical pain responded well to routine treatment, exercise, and walking. Imaging revealed only mild or minimal deficits in the cervical spine and no significant degenerative changes in the thoracic spine. Thus, the ALJ considered sources of pain that were separate and apart from the listed impairments and found they were not severe.

Plaintiff has not identified any other pain that could comprise part of his chronic pain syndrome and that the ALJ failed to consider at step two. Nor has Plaintiff explained how the ALJ's consideration of chronic pain syndrome as a whole would have differed from the ALJ's consideration of the individual sources of pain. Accordingly, the Court finds that the ALJ did not err at step two by not discussing specifically whether chronic pain syndrome was a severe impairment.

Even if the ALJ had erred at step two, however, the error was harmless. An ALJ's failure to consider an impairment at step two is harmless if the ALJ considered the effects of the impairment at a later step of the sequential evaluation. *E.g., Chapman v. Kijakazi*, No. 1:20-CV-125 PLC, 2022 WL 2064889, at *4, 6 (E.D. Mo. June 8, 2022); *Gullett v. Soc. Sec. Admin.*, No. 3:21-CV-25, 2022 WL 1749843, at *4 (D.N.D. Mar. 28, 2022); *Polly O. v. Kijakazi*, No. 20-CV-1820 (ECT/ECW), 2021 WL 6297542, at *17 (D. Minn. Dec. 16, 2021), *R. & R. adopted*, 2022 WL 62083 (D. Minn. Jan. 6, 2022) ("[T]he prevailing view of courts in this District has been that an error at step two may be harmless where the ALJ considers all of the claimant's functional limitations as the result of impairments in the evaluation of the claimant's RFC."); *Misty G. v. Berryhill*, No. 0:18-CV-00587-KMM, 2019 WL 1318355, at *3–4 (D. Minn. Mar. 22, 2019) (citing cases); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010).

Here, in determining Plaintiff's RFC, the ALJ considered and summarized numerous medical records and other evidence concerning Plaintiff's pain. (R. 185–91.) With respect to Plaintiff's low back pain, the ALJ found that physical findings were generally benign or unremarkable, and treatment was conservative and successful. (R. 185, 187.) The ALJ took note, however, of a lumbar spine MRI that revealed significant right scoliosis and multilevel degenerative changes. (R. 187.) Plaintiff's neck pain had improved significantly with chiropractic treatment, medication, physical therapy, exercise, and injections. (R. 185–87.) Imaging of the cervical spine was "rather benign." (R. 186.) Plaintiff reported to his providers that he walked daily, rode his bicycle regularly, and exercised up to five times a week. (R. 187.) The ALJ considered Plaintiff's testimony about

17

his pain but found it inconsistent with the objective medical evidence, providers' observations and clinical findings, conservative treatment and medication regimen, and Plaintiff's statements to his providers. (R. 188–89.) The ALJ also considered Dr. Osborne's opinions and articulated in great detail why he found them not persuasive. (R. 189–91.) To account for the degree of pain and other limitations the ALJ accepted, the ALJ limited Plaintiff to light work, with additional postural, environmental, and manipulative restrictions. (R. 188.)

The Court is satisfied that the ALJ fully considered Plaintiff's chronic pain in assessing Plaintiff's RFC, and that the RFC would not have changed even if the ALJ had considered chronic pain syndrome as a potential severe impairment at step two. Thus, any error was harmless. *See Jones v. Kijakazi*, No. 4:23-CV-24 SRW, 2024 WL 324079, at *8 (E.D. Mo. Jan. 29, 2024) ("Even though the ALJ may not have labeled Plaintiff's 'chronic pain syndrome' as a severe impairment, the decision reflects the ALJ's consideration of Plaintiff's chronic pain and evidences the RFC would not have changed even if the diagnosis was included as a severe impairment in Step Two."); *Rosalind J. G. v. Berryhill*, No. 18-CV-82 (TNL), 2019 WL 1386734, at *20 (D. Minn. Mar. 27, 2019) ("Consistent with the prevailing view in this District, any potential error by the ALJ in not including Plaintiff's chronic pain syndrome as a severe impairment at step two was harmless based on the ALJ's consideration of the intensity, persistence, and functional effects of Plaintiff's pain when determining her residual functional capacity."); *Burgess v. Berryhill*, No. 4:17-CV-2316 ACL, 2018 WL 4457308, at *6 (E.D. Mo. Sept. 17, 2018) ("Even if the ALJ should have noted Burgess' diagnoses of breast cancer, post-mastectomy pain syndrome,

or chronic pain syndrome as severe, his failure to do so would not be sufficient cause for remand because it is the functional limitations imposed by a severe impairment that are dispositive, not the fact of diagnosis.").

### C.   The ALJ Properly Assessed Plaintiff's RFC.

Plaintiff contends the ALJ erred in assessing his RFC by not including limitations related to his mental impairments and chronic pain syndrome. (Pl.'s Mem. at 33.)

The Court has already discussed the ALJ's consideration of Plaintiff's pain in assessing Plaintiff's RFC in Part III.B. above and incorporates by reference that discussion. The Court now finds that substantial evidence in the record as a whole supports the limitations related to Plaintiff's pain as determined by the ALJ. Further, Plaintiff does not describe any particular limitation related to his pain that the ALJ should have included in the RFC.

As to Plaintiff's mental impairments, Plaintiff does not identify any specific limitations—other than Dr. Osborne's opinion that Plaintiff would be significantly limited in his ability to maintain attention, concentration, persistence, and pace—that the ALJ should have included in the RFC. (Pl.'s Mem. at 33.) The ALJ found Dr. Osborne's opinion not persuasive because it was not supported by her own treatment notes, observed clinical findings, or conservative treatment modality, and the opinion was inconsistent with medical records from other providers that lacked evidence of mental health treatment or signs of mental distress. (R. 183.) Plaintiff has not shown that the ALJ erred in considering and articulating the persuasiveness of Dr. Osborne's opinion, and the ALJ was entitled to disregard an opinion he found not persuasive.

To the extent Plaintiff challenges the hypothetical question posed at the hearing to the VE (Pl.'s Mem. at 34–35), the question included all the limitations that the ALJ found supported by substantial evidence in the record as a whole. Therefore, the hypothetical question was proper. *See Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006).

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Memorandum (Dkt. No. 6) is **DENIED**;

2. The relief requested in Defendant's Brief (Dkt. No. 9) is **GRANTED**; and

3. The final decision of the Commissioner of the Social Security Administration is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 18, 2025

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge